# EXHIBIT B

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE BOONE SUPERIOR COURT 1 |
| | ) SS: | |
| COUNTY OF BOONE | ) | CAUSE NO. 06D01- |

NEIL BURCH,

    Plaintiff,

vs.

SHEIN DISTRIBUTION CORPORATION and
STYLE LINK LOGISTICS LLC,

    Defendants.

## SUMMONS

The State of Indiana to Defendant:

**Style Link Logistics LLC**
**c/o Paracorp Incorporated, Registered Agent**
**320 N. Meridian St., Ste. 817**
**Indianapolis, IN 46204**

You have been sued by the person(s) named "Plaintiff" in the court stated above.

The nature of the suit against you is stated in the complaint which is attached to this document. It also states the demand which Plaintiff has made and wants from you.

You must answer the complaint in writing, by you or your attorney, within twenty (20) days (twenty-three days if received by mail) commencing the day after you receive complaint and summons, or judgment will be entered against you for what Plaintiff has demanded.

If you have a claim for relief against Plaintiff arising from the same transaction or occurrence, you must assert it in your written answer.

Date: _____11/22/2024_____      _____
                                                             Clerk, Boone Superior Court
                                                                     (seal)

1

Attorney for Plaintiff:           SERVICE BY: __X__ Certified Mail
Jason P. Cleveland                 _____ Sheriff of
CLEVELAND LEHNER CASSIDY                  Boone County
1901 Broad Ripple Ave.             _____ Personal Service
Indianapolis, IN 46220

## CERTIFICATE OF MAILING

I hereby certify that on the _____ day of _____, 2024 I mailed a copy of this summons and a copy of the complaint to each of the defendant(s) by [registered or certified] mail requesting a return receipt signed by the addressee only, addressed to each of said defendant(s) at the address(es) furnished by Plaintiff.

Date: _____        _____
                                      Clerk, Boone Superior Court
                                      (seal)

## RETURN OF SERVICE OF SUMMONS BY MAIL

I hereby certify that service of summons with return receipt requested was mailed on the _____ day of _____, 2024, and that a copy of return receipt was received on the _____ day of _____, 2024, which copy is attached herewith.

Date: _____        _____
                                      Clerk, Boone Superior Court
                                      (seal)

## CERTIFICATE OF CLERK OF SUMMONS NOT ACCEPTED BY MAIL

I hereby certify that on the _____ day of _____, 2024, I mailed a copy of this summons and a copy of the complaint to the defendant(s) by [registered or certified] mail, and the same was returned without acceptance this _____ day of _____, 2024 and I did deliver said summons and a copy of the complaint to the Sheriff of _____ County, Indiana.

Date: _____            _____
                                  Clerk, Boone Superior Court
                                  (seal)

2

RETURN ON SERVICE OF SUMMONS

I hereby certify that I have served the within summons:

1.  By delivering on the _____ day of _____, 2024, a copy of this summons and a copy of the complaint to each of the within-named defendant(s) _____

2.  By leaving on the _____ day of _____, 2024 for each of the within-named defendant(s) _____ a copy of the summons and a copy of the complaint at the respective dwelling house or usual place of abode.

3.  _____ and by mailing a copy of the summons without the complaint to _____ at _____, the last known address of defendant(s).

All done in Boone County, Indiana      Fees:  $_____


_____        _____
Sheriff of Boone County               By Deputy


SERVICE ACKNOWLEDGED

A copy of the within summons and a copy of the complaint attached thereto were received by me at _____ this _____ day of _____, 2024.

                                      _____
                                      Signature of Defendant

3

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE BOONE SUPERIOR COURT 1 |
| | ) SS: | |
| COUNTY OF BOONE | ) | CAUSE NO. 06D01- |

| | |
|---|---|
| NEIL BURCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SHEIN DISTRIBUTION CORPORATION and | ) |
| STYLE LINK LOGISTICS LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Neil Burch ("Plaintiff"), by counsel, files his Complaint and Demand for Jury Trial against Defendants, Shein Distribution Corporation ("Shein") and Style Link Logistics LLC ("Style Link") (collectively "Defendants"), and states as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff is an individual formerly jointly employed by Shein and Style Link.

2. Defendant Style Link operates a distribution center for Defendant Shein located at 5400 E 500 S, Whitestown, IN 46075.

3. All of the actions and events relevant to this Complaint occurred at the distribution center located in Whitestown.

4. Venue is proper in Boone County, Indiana pursuant to Indiana Rule of Trial Procedure 75(A).

1

## FACTS

5. Defendant Style Link lists its primary office address at 5400 E 500 S, Whitestown, IN 46075.

6. The distribution center located at 5400 E 500 S, Whitestown, IN 46075 prominently displays the corporate name "SHEIN" over the main entrance to the facility.

7. Some employees who work in the distribution center are designated as Style Link employees and others are designated as Shein employees, but all Style Link employees ultimately report to Shein employees.

8. Defendants operate a distribution center that receives, processes, and distributes products to consumers.

9. The products Defendants distribute include hazardous materials such as certain types of batteries and cosmetics.

10. Defendants are required to package and label hazardous materials in accordance with federal shipping laws.

11. The Hazardous Materials Transportation Act, codified as 49 U.S.C. § 5101 *et seq.*, governs the transportation of hazardous materials in commerce to protect against the risks to life, property, and the environment that are inherent in the transportation of hazardous materials.

12. 49 U.S.C. § 5123 states that a person who knowingly violates the laws governing the transportation of hazardous materials is subject to civil penalties.

13. 49 U.S.C. § 5124 states that a person who knowingly violates the laws governing the transportation of hazardous materials is subject to imprisonment.

14. Plaintiff began working for Defendants on or about April 1, 2024 as a Training Manager.

15. Defendants jointly exercised control over the terms and conditions of Plaintiff's employment.

16. At all relevant times, Plaintiff's direct supervisor was Style Link's Director of Operations, William Wash ("Wash"); Wash's direct supervisor was Shein's Director of Warehouses, Tao "Terry" Lu ("Lu"); and Lu's direct supervisor was Shein's Head of US Logistics, Wei "Andy" Huang ("Huang").

17. Plaintiff has approximately 35 years of experience working as a training instructor, training supervisor, and training manager.

18. In his role as Training Manager for Defendants, Plaintiff supervised three Training Supervisors and had several responsibilities involving onboarding and training new employees, including, but not limited to, training employees on the handling and shipping of hazardous materials.

19. Defendants had a designated area in the distribution center where hazardous materials were supposed to be packaged separate from non-hazardous materials.

20. After his hire, Plaintiff discovered that a significant number of products constituting hazardous material were misplaced about the distribution center that should have been in the designated area for packaging hazardous materials.

3

21. In or about August 2024, Defendants began testing an automated scanning system, which was supposed to identify incoming products that qualify as hazardous materials (the "Auto System").

22. The Auto System did not function properly and regularly failed to accurately identify hazardous products.

23. Plaintiff and his subordinates repeatedly informed Defendants that the Auto System was malfunctioning and not ready for implementation in the distribution center.

24. In or about August 2024, Huang visited the Whitestown distribution center. During his visit, he went to the hazardous materials shipping area. Huang became angry about the boxes that were being used to ship hazardous materials, yelling and complaining that Defendants were spending too much money on shipping hazardous materials.

25. In or about August 2024, Huang informed Wash that Defendants were going to start shipping all products in "poly" bags, including hazardous materials, that are not compliant with federal laws governing the transportation of hazardous materials (the "New Policy").

26. Wash told Huang that Defendants could not ship hazardous materials in poly bags and needed to comply with federal law.

27. Huang told Wash to stay out of it; not to worry about it; that no one would go to jail; and compared it to running a red light in a car, saying that if you get caught, you just pay the fine and move on with your life.

28. On or about September 16, 2024, Wash informed Plaintiff about the New Policy that Defendants were no longer going to be labeling and shipping hazardous materials properly and instead would be shipping them in "poly" bags that are not compliant with federal law governing the shipping of hazardous materials.

29. Plaintiff immediately expressed concern about the New Policy and objected to the same.

30. Wash indicated that he understood Plaintiff's concerns but had no control over the New Policy as it was being implemented by executive employees of Shein over his objection.

31. Later that day, Plaintiff attended a meeting where Wash informed Defendants' senior level managers about the New Policy.

32. Plaintiff spoke up during the meeting and stated that what Defendants intended to do regarding the New Policy was illegal.

33. On September 17, 2024, Plaintiff sent an email to Defendants' ethics team, stating, "[t]he direction given to the distribution center in Whitestown, IN to not package HAZ items correctly starting 9/18/2024 is unethical, immoral, reckless, dangerous, and illegal. I will not follow this direction or comply in any way placing our carriers, drivers, customers, the company, our employees, the general population or myself in potential danger or legal trouble. Following this practice goes against every part of my being and would compromise my integrity and character as a leader. I will not follow this or direct other to do so." Plaintiff then included in the email various

5

postings from common parcel carriers, stating that shipping hazardous materials improperly can result in civil and criminal penalties.

34. On September 18, 2024, Plaintiff resent the same email to the ethics team as well as to several of Defendants' executives, including Wash; Lu; Huang; Shein's Human Resource Business Partner, Katrina Chen ("Chen"); and Shein's Human Resource Manager, Jane Burke ("Burke").

35. Later that day, Huang emailed Wash and directed him to "manage out" Burch by September 30, 2024 under the threat of retaining his own job.

36. Wash told Huang that Defendants could not terminate Burch because Defendants had never disciplined Burch or placed him on a performance improvement plan ("PIP").

37. Huang told Wash that he wanted Burch "gone" and directed him to place him on a PIP but made it clear to Wash that he still wanted Burch terminated.

38. On September 30, 2024, Plaintiff was summoned to a meeting with Wash and Burke who placed in front of him two documents – a PIP and a proposed severance agreement with "Shein Distribution Corporation" – stating that he had 24 hours to accept the severance or be placed on the PIP.

39. Defendants had never issued any discipline to Plaintiff for alleged performance deficiencies prior to September 30, 2024.

40. The following day, October 1, 2024, Plaintiff contacted Wash and inquired about the terms of the severance agreement, specifically that the agreement stated he had 21 days to consider the same. Wash responded that Plaintiff had to provide him

6

with a signed agreement that day if he wanted to accept the severance instead of being placed on the PIP.

41. Defendants' actions clearly indicated to Plaintiff that he would ultimately be terminated if he did not accept the severance.

42. Wash's and Burke's actions were authorized by Defendants, were carried out in furtherance of Defendants' policies, and were intended by Defendants to cause Plaintiff emotional distress.

43. Under duress, and without being allowed an opportunity to seek legal counsel, Plaintiff delivered an executed severance agreement to Wash.

44. Defendant's actions constitute a constructive discharge of Plaintiff.

45. Pursuant to the terms of the severance agreement, "Employee may revoke Employee's acceptance of this Agreement within seven (7) calendar days after the date Employee signs it. Employee's revocation must be in writing and received by Jane Burke, HR Manager . . . before the eighth day (from Employee's date of execution of this Agreement) in order to be effective ('Revocation Period'). If Employee does not revoke acceptance of this Agreement within the Revocation Period, Employee's acceptance of this Agreement shall become binding and enforceable on the eighth day ('Effective Date')."

46. Plaintiff emailed Burke before the eighth day following his execution of the severance agreement and revoked his acceptance.

47. Burke emailed Plaintiff and acknowledged his revocation.

48. Plaintiff has suffered harm because of Defendants' unlawful acts.

7

## COUNT I

## RETALIATORY DISCHARGE (MCCLANAHAN)

49. Plaintiff incorporates by reference paragraphs 1 – 48 of his Complaint.

50. Defendants constructively discharged Plaintiff for refusing to commit an illegal act for which he would have been personally liable (*McClanahan v. Remington Freight Lines*, 517 N.E.2d 390 (1988)).

51. Defendants' unlawful actions were intentional, willful, and done in reckless disregard of Plaintiff's rights as protected by Indiana common law.

## COUNT II

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

52. Plaintiff incorporates by reference paragraphs 1 – 51 of his Complaint.

53. Defendants engaged in extreme and outrageous conduct towards Plaintiff.

54. Defendants' conduct intentionally or recklessly caused severe emotional distress to Plaintiff.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, Neil Burch, respectfully requests judgment in his favor and against Defendant and order that:

I. Defendants pay past and prospective lost wages and benefits to Plaintiff;

II. Defendants pay compensatory damages to Plaintiff;

III. Defendants pay punitive damages to Plaintiff;

IV. Defendants pay pre-judgment and post-judgment interest;

V. Defendants pay Plaintiff's attorneys' fees and costs incurred in litigating this action; and

VI. Defendants pay to Plaintiff any and all other legal and/or equitable damages that this Court deems appropriate.

Respectfully Submitted:

*s/ Jason P. Cleveland*
Jason P. Cleveland, 24126-53
Thaddeus M. Keefer, 36337-49
CLEVELAND LEHNER CASSIDY
1901 Broad Ripple Ave.
Indianapolis, IN 46220
Tel: 317-388-5424
jason@clcattorneys.com
thaddeus@clcattorneys.com

Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff, Neil Burch, respectfully requests a jury trial for all issues deemed triable.

Respectfully Submitted,

*s/ Jason P. Cleveland*
Jason P. Cleveland, 24126-53