UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NEIL BURCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-02267-JPH-MG |
| | ) |
| SHEIN DISTRIBUTION CORPORATION, | ) |
| STYLE LINK LOGISTICS LLC, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Neil Burch brings claims of retaliatory discharge and intentional infliction of emotional distress against his former employers, alleging that they fired him because he refused to follow a company policy that would violate federal law.  Defendants have filed a motion to dismiss.  Dkt. [14].  For the reasons below, that motion is **GRANTED.**

**I.
Facts and Background**

Because Defendants have moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Neil Burch was a training manager at a distribution center operated by Style Link Logistics, LLC, for Shein Distribution Corporation (collectively, "Shein" or "Defendants").  Dkt. 1-2 at 5–7.  As a training manager, Mr. Burch supervised training supervisors and was responsible for onboarding and training new employees.  *Id.* at 7.  This included training them on how to

1

handle and ship hazardous materials such as batteries or cosmetics that were processed through the distribution center. *Id.* at 6–7. These hazardous materials are required to be shipped in accordance with federal shipping laws. *Id.* at 6.

In August 2024, Shein's head of United States logistics, Wei "Andy" Huang, visited the distribution center. *Id.* at 7–8. He became angry that boxes were being used to ship hazardous materials, complaining that too much money was being spent on shipping. *Id.* at 8. He informed Style Link's Director of Operations, William Wash, that all products—including hazardous materials—were to be shipped in "poly" bags. *Id.* at 7–8. Mr. Burch alleges that these poly bags were not compliant with federal laws on shipping hazardous materials. *Id.* at 8.

On September 16, 2024, Mr. Wash told Mr. Burch that they would be shipping hazardous materials in the poly bags. *Id.* at 9. Mr. Burch expressed his concerns about the policy to Mr. Wash, and again at a meeting later that day when Mr. Wash informed senior level managers about the policy. *Id.* The next day, Mr. Burch sent an email to Shein's ethics team, stating:

> The direction given to the distribution center in Whitestown, IN to not package HAZ items correctly starting 9/18/2024 is unethical, immoral, reckless, dangerous, and illegal. I will not follow this direction or comply in any way placing our carriers, drivers, customers, the company, our employees, the general population or myself in potential danger or legal trouble. Following this practice goes against every part of my being and would compromise my integrity and character as a leader. I will not follow this or direct other to do so.

*Id.* at 9–10 (email dated September 17, 2024).

On September 18, 2024, Mr. Burch resent the email to the ethics team and several executives, including Mr. Wash and Mr. Huang. *Id.* at 10. That same day, Mr. Huang directed Mr. Wash to "manage out" Mr. Burch by September 30, 2024, or else risk losing his own job. *Id.* at 10. Mr. Wash responded that they could not terminate Mr. Burch as he had never been disciplined or placed on a performance improvement plan ("PIP"). *Id.* Mr. Huang responded by directing Mr. Wash to place Mr. Burch on a PIP and made it clear that he wanted Mr. Burch terminated. *Id.*

On September 30, Mr. Burch "was summoned to a meeting with" Mr. Wash and a Human Resource Manager where they told Mr. Burch he had 24 hours either to accept placement on a PIP or accept a severance agreement. *Id.* The severance agreement stated that the employee had twenty-one days to consider whether to accept it, but Mr. Wash gave Mr. Burch only one day to make his decision. *Id.* at 10–11. Mr. Burch signed the severance agreement, which included a clause allowing the employee to revoke acceptance of the severance agreement within seven days of signing. *Id.* at 11. Within those seven days, Mr. Burch emailed HR and revoked his acceptance. *Id.*

Mr. Burch filed a complaint in Boone Superior Court, alleging retaliatory discharge and intentional infliction of emotional distress. Dkt. 1-2. Defendants removed the case to this Court, dkt. 1, and then moved to dismiss, dkt. 14.

## II.
## Rule 12(b)(6) Standard

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In other words, a complaint "must allege enough details about the subject-matter of the case to present a story that holds together," *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021), "but it need not supply the specifics required at the summary judgment stage." *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021).

When ruling on a 12(b)(6) motion, the Court "accept[s] the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley*, 671 F.3d at 616.  "It is enough to plead a plausible claim, after which a plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017) (internal quotations omitted).  The Court construes the complaint "in the light most favorable to the nonmoving party . . . and draw[s] all inferences in [the non-moving party's] favor." *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289–90 (7th Cir. 2016).

4

Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019). Absent a controlling decision from the Indiana Supreme Court, the Court does its best to predict how that court would rule on the issues of law. *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 319 (7th Cir. 2021). In doing so, the Court may consider decisions from the Indiana Court of Appeals. *See id.*

### III.
### Analysis

#### A. Retaliatory discharge

"Indiana generally follows the employment at will doctrine, which permits both the employer and the employee to terminate the employment at any time for a good reason, bad reason, or no reason at all." *Meyers v. Meyers*, 861 N.E.2d 704, 706 (Ind. 2007). There is a limited exception, however, "when an employee is discharged for refusing to commit an illegal act" for which the employee could be personally liable. *McClanahan v. Remington Freight Lines, Inc.*, 517 N.E.2d 390, 392–93 (Ind. 1988). Here, Shein argues that Mr. Burch—as a supervisor—cannot bring a *McClanahan* claim, and that he was not constructively discharged. Dkt. 15 at 5–9. Mr. Burch responds that he can bring a *McClanahan* claim, and that he was constructively discharged. Dkt. 24 at 3–8.

##### 1. *McClanahan*

For a *McClanahan* claim, the key question is whether a plaintiff might be personally liable for refusing to engage in unlawful conduct—not whether the

plaintiff was in a supervisory role. *See McClanahan,* 517 N.E.2d at 393 ("[F]iring an employee for refusing to commit an illegal act for which he would be personally liable is . . . a violation of public policy" and warrants an exception to the at-will employment doctrine); *Remington Freight Lines, Inc. v. Larkey*, 644 N.E.2d 931, 938 (Ind. Ct. App. 1994) (applying the personal liability requirement of *McClanahan*). Defendants point to *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 177 (Ind. 1996) in support of their position, arguing that *Wior* "refused to expand the public policy exception to supervisors." Dkt. 15 at 6. In *Wior*, the Indiana Supreme Court declined to allow a wrongful discharge claim from a supervisor who alleged he was fired for refusing to terminate an employee over a worker's compensation claim. 669 N.E.2d at 177. But *Wior*'s holding is not as expansive as Defendants argue it to be. *Wior* declined to allow the supervisor's claim for wrongful termination because the public interest at stake was sufficiently protected by the *Frampton* exception to employment-at-will, which allows an employee wrongfully discharged because of a worker's compensation claim to bring a claim against the former employer. *Id.* at 177–78. The court further explained that the reason for extending *Frampton* in *McClanahan* was that the employee could have been personally liable for violating the law that his employer instructed him to ignore, unlike the situation in *Wior* where the supervisor could not have been held personally liable for unlawfully terminating the employee. *Id.* at 177.

Here, by contrast, Mr. Burch alleges he was fired for refusing to instruct employees to use poly bags for shipping hazardous materials. Dkt. 1-2 at 8–

6

10.  He cites the Hazardous Materials Transportation Act, 49 U.S.C. § 5101 *et seq.*, which provides potential criminal and civil penalties for "[a] person" knowingly violating the Act, or "a regulation, order, special permit, or approval issued" under the Act.  49 U.S.C §§ 5123, 5124.  The Act and its implementing regulations "apply to a person who"—among other things—"prepares or accepts hazardous material for transportation in commerce," "is responsible for the safety of transporting hazardous material in commerce," or "certifies compliance with any requirements under this chapter."  49 U.S.C. § 5103; *see also* 49 U.S.C. § 5102(9) (defining "person" under the Act as including individuals).[1]  So, under the plain language of its text, the Act does not limit liability to employees who personally handle and ship materials covered by the Act.  *Id.*; *see* dkt. 25 at 5–6.  Shein briefly argues that the provisions Mr. Burch cites (particularly, 49 U.S.C. §§ 5123, 5103) cannot be "violated."  Dkt. 25 at 6.  But Mr. Burch cites those provisions only to argue that he is a covered "person" under the Act.  Dkt. 24 at 6.  As to any violation, Defendants have cited no legal authority undermining Mr. Burch's allegation that the shipping policy was illegal under the Act, dkt. 1-2 at 6.

As such, Mr. Burch has pled a plausible claim that, in his role as a training manager responsible for training employees on shipping hazardous

---

[1] Defendants argue that Mr. Burch's cite to § 5103 "must be disregarded" because it wasn't mentioned in his complaint.  Dkt. 25 at 6.  But Mr. Burch cites to the Hazardous Materials Transportation Act in his complaint.  Dkt. 1-2 at 6.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that the "short and plain statement" requirement is intended only to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests").

7

materials, he could qualify as a person covered by the Act, and therefore be subject to criminal or civil liability for knowingly violating the Act or its regulations. So, Mr. Burch has adequately pled a claim under *McClanahan*.[2]

### 2. Constructive discharge

Next, Defendants argue that Mr. Burch cannot bring a retaliatory discharge claim because he has not alleged facts sufficient to show that he was constructively discharged. Dkt. 15 at 7; dkt. 1-2 at 12 ¶ 50. Mr. Burch responds that "Defendants' actions would cause any reasonable person to conclude that he would be terminated if he did not resign," and that his work conditions were otherwise "intolerable," so he was constructively discharged. Dkt. 24 at 7.

In the Seventh Circuit, constructive discharge requires the plaintiff to "show that []he was forced to resign because h[is] working conditions, from the standpoint of a reasonable employee, had become unbearable." *E.E.O.C. v. Univ. of Chi. Hosps.*, 276 F.3d 326, 331 (7th Cir. 2002). Such conditions may exist "[w]hen an employer acts in a manner so as to have communicated to a reasonable employee that []he will be terminated, and the plaintiff employee resigns." *Id.* at 332. In other words, an "environment [where the] employer made reasonably clear to [the employee] that [he] had reached the end of the line—where 'the handwriting [was] on the wall' and the axe was about to fall—

---

[2] Since the Court has determined Mr. Burch has pled a claim within the scope of *McClanahan*, Defendants' additional argument that Mr. Burch cannot establish a *McClanahan* claim based on "terminat[ion] for reporting wrongful conduct," dkt. 15 at 6–7, fails. And at any rate, Mr. Burch is alleging termination due to refusal to engage in illegal conduct, dkt. 1-2 at 12, not due to reporting others' illegal conduct.

could have indeed been to a reasonable employee unbearable." *Id.*; *see Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 494, 502 (7th Cir. 2010) (an employee being given the choice to resign or be fired qualifies as constructive discharge). However, the "prospect of discharge lurk[ing] in the background" is not sufficient to create "intolerable or unbearable" working conditions. *Myers v. Sunman-Dearborn Cmty. Schs.*, 142 F.4th 527, 535 (7th Cir. 2025).

Here, Shein argues that Mr. Burch has not alleged constructive discharge because he has "failed to plausibly allege his workplace was worse than a hostile work environment." Dkt. 25 at 9; dkt. 15 at 9. But the existence of a "hostile-work-environment-plus" isn't the only way to show constructive discharge. *See E.E.O.C.*, 276 F.3d at 332 & n.4 (explaining that there are two distinct types of constructive discharge, one based on "hostile-work-environment-plus" and another based on "imminent discharge").

For an imminent-termination case—Mr. Burch's theory here—the plaintiff must still allege "intolerable" conditions. *Myers*, 142 F.4th at 535. But to determine whether conditions were intolerable, the Seventh Circuit evaluates whether the threat of termination was imminent, rather than whether the environment was made hostile by harassment or physical threats. *See, e.g., id.* at 535–36 (rejecting constructive discharge argument because there was insufficient evidence of "imminent and unavoidable termination").

Here, Mr. Burch said he would not enforce the hazardous materials packing and shipping policy, and Mr. Huang then directed Mr. Wash to fire Mr. Burch. Dkt. 1-2 at 8–10. When Mr. Wash told Mr. Huang they couldn't fire

9

Mr. Burch because he'd never been disciplined or placed on a PIP, Mr. Huang directed Mr. Wash to put him on a PIP and made it clear that he wanted Mr. Burch "gone." *Id.* at 10. At the September HR meeting less than two weeks later, Mr. Burch was given the choice to either accept a severance agreement or be placed on a PIP. *Id.* He was given only 24 hours to make that decision. *Id.* at 10–11.

However, even if Mr. Wash was directed to fire Mr. Burch, and the PIP was a step toward eventually achieving that end, Mr. Burch makes no allegation that he knew any of those facts when he was given the choice between the PIP and the severance agreement. *See generally* dkt. 1-2; dkt. 25 at 7 (citing *Barney v. Zimmer Biomet Holdings, Inc.*, Case No. 3:17-CV-616 JD, 2018 WL 6179392, *5–6 (N.D. Ind. Nov. 26, 2018)). Instead, he alleges that "Defendants' actions clearly indicated to Plaintiff that he would *ultimately* be terminated if he did not accept the severance." Dkt. 1-2 at 11 ¶ 41 (emphasis added). That's crucial. Without knowledge of the facts showing that termination was truly imminent, all a reasonable employee could have concluded from the HR meeting—held shortly after he complained—was that a "prospect of discharge lurked in the background." *Myers*, 142 F.4th at 535.

Moreover, the complaint is silent as to what Mr. Huang, Mr. Wash, or any other supervisory personnel, may have said to Mr. Burch between September 18 (when he resent the email to the ethics and executive teams objecting to the new hazardous materials packing and shipping policy) and the September 30 meeting with Mr. Wash and HR. Dkt. 1-2 at 10–11

10

(chronological recitation of events in complaint jumps from September 18 to September 30). Noticeably absent is any allegation that Mr. Burch was harassed or threatened with termination for refusing to follow the hazardous materials packing and shipping policy after it was apparently implemented on September 18, dkt. 1-2 at 9. Giving Mr. Burch "the benefit of imagination," *Chapman*, 875 F.3d at 848, as the Court must, the uneventful nearly two-week long span of Mr. Burch's employment from September 18 to September 30 is inconsistent with his "imminent termination" argument. Also, Mr. Burch makes no allegations that Mr. Wash or the HR representative said something in during the September 30 meeting that would lead a reasonable person to conclude that the choice between a severance agreement or being put on a PIP meant his termination was imminent. Finally, he provides no information about the terms of the PIP, such as immediate termination upon failure to carry out the packing and shipping policy, that supports the inference that going on the plan was tantamount to being fired.

Considering the complaint in its entirety, it would be implausible for a reasonable person to conclude that being given the choice between a severance agreement or being put on a PIP equated to a threat of immediate and unavoidable termination. *See Myers*, 142 F.4th at 535–36. And as explained in *Myers*, a "prospect of discharge lurk[ing] in the background" is not enough to create "intolerable or unbearable" working conditions. *Id.* at 535. Mr. Burch cannot establish constructive discharge without adequately pleading such conditions. *See id.* at 534–36. As such, Defendants' motion to dismiss is

**GRANTED** as to the retaliatory discharge *McClanahan* claim set forth in Count I.

### B. Intentional infliction of emotional distress

To establish a claim of intentional infliction of emotional distress (IIED), a plaintiff must prove the defendant "(1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress to another." *State v. Alvarez ex rel. Alvarez*, 150 N.E.3d 206, 218 (Ind. Ct. App. 2020). "The conduct alleged must be 'so outrageous' and 'so extreme' so as to go 'beyond all possible bounds of decency.'" *Cortezano v. Salin Bank & Trust Co.*, 680 F.3d 936, 941 (7th Cir. 2012) (quoting *York v. Fredrick*, 947 N.E.2d 969, 976–77 (Ind. Ct. App. 2011)). Shein argues that telling Mr. Burch he could either accept a severance package or be placed on a PIP does not constitute extreme and outrageous conduct and that he fails to plead facts which, if assumed true, establish an intent to cause severe emotional distress. Dkt. 15 at 10–13. Mr. Burch responds that ordering employees to violate law is "extreme and outrageous on its face" and that Defendants' attempt to "manage [him] out . . . certainly suggests an intent to cause emotional distress." Dkt. 24 at 9, 11. He cites no case, however, where a court applying Indiana law has allowed a claim for intentional infliction of emotional distress to proceed based on an alleged wrongful or retaliatory discharge of an at-will employee. And courts applying Indiana law have been reluctant to allow a plaintiff to bring an intentional infliction of emotional distress claim based on the circumstances surrounding termination of employment. *See Cortezano,* 680 F.3d at 941

12

(affirming district court's grant of summary judgment on intentional infliction of emotional distress claim against former employer based on circumstances surrounding termination); *cf. Tracy v. Fin. Ins. Mngmt. Corp.*, 458 F. Supp. 2d 734, 747–48 (S.D. Ind. 2006) (noting that the requirements for employment IIED claims are "rigorous" and "declin[ing] to find outrageous and extreme an employer's decision to terminate its business relationship with an employee").

While it's doubtful that Mr. Burch has alleged the type of extreme conduct required to support a claim for intentional infliction of emotional distress, the Court does not need to resolve that question. Even if he had, the claim still fails because Mr. Burch has not pled facts plausibly supporting his claim that the Defendants intended to cause severe emotional distress. Dkt. 24 at 9. His complaint merely states the conclusion that Mr. Wash and Mr. Burke's actions, carried out in furtherance of company policy, "were intended by Defendants to cause Plaintiff emotional distress." Dkt. 1-2 at 11; *Ashcroft*, 556 U.S. at 678 ("labels and conclusions" are not enough). And in his response brief, argues that the "ultimatum" of being placed on a PIP or accepting severance was "designed to create stress" and "certainly suggests an intent to cause emotional distress." Dkt. 24 at 9–10. But that argument proves too much—Mr. Burch cites no authority suggesting that it would be permissible to infer intent to inflict severe emotional distress based solely on an employer's plan to terminate an employee, even if done unreasonably. And Plaintiff fails to explain why any intended "stress" equates to intended "severe emotional distress." *See Atl. Coast Airlines v. Cook*, 857 N.E.2d 989, 1000 (Ind.

13

2006) (noting that severe emotional distress is "distress so severe that *no reasonable [person] could be expected to endure it*" (emphasis added)). The same conclusion follows even if Shein ordered Mr. Burch to enforce an illegal policy. Mr. Burch has only alleged that Defendants' intent was saving money, dkt. 1-2 at 8, not inflicting distress. *See also Bd. of Trs.*, 87 N.E.3d 481, 500 (Ind. Ct. App. 2017) ("The intent to harm emotionally constitutes the basis of the tort."). Thus, Mr. Burch has failed to sufficiently allege the intent necessary to state a claim for intentional infliction of emotional distress. *Twombly*, 550 U.S. at 545.

Because Mr. Burch has failed to plead facts plausibly suggesting that Defendants intended to cause him severe emotional distress, the Court does not reach the remaining IIED elements. Defendants' motion to dismiss is **GRANTED** as to the intentional infliction of emotional distress claim set forth in Count II.

### C. Attorneys' fees

Mr. Burch's complaint contains a request for attorneys' fees and costs incurred as part of his prayer for relief. Dkt. 1-2 at 13. Shein argues this request should be dismissed under Rule 12(b)(6), as the complaint doesn't identify any statutory authority or agreement that would allow an award of attorneys' fees. Dkt. 15 at 13–14.

"Indiana adheres to the 'American Rule' that parties must pay their own attorney fees absent an agreement between the parties, a statute, or another rule to the contrary." *Storch v. Provision Living, LLC*, 47 N.E.3d 1270, 1272

14

(Ind. Ct. App. 2015). Mr. Burch points to *F.D. Rich v. United States for the Use of Indus. Lumber Co.,* 417 U.S. 116, 129–130 (1974), which laid out various exceptions to this rule, including (1) for a party's "bad faith" or "vexatious[]" conduct and (2) to offset litigation expenses "necessary to enforce important public policies" ("private attorney general" exception).

First, Mr. Burch has presented no colorable claim that Defendants acted vexatiously or in bad faith during this litigation, so that argument may be set aside. Second, the Supreme Court noted in *F.D. Rich* that various "lower courts" have recognized the "private attorney general" rationale. *Id.* However, Mr. Burch points to no authority indicating that Indiana recognizes the exception, even assuming it could theoretically apply to him as "a private person acting to vindicate the public interest." *State Bd. of Tax Com'rs v. Town of St. John*, 751 N.E.2d 657, 659 (Ind. 2001). In fact, Indiana declined to adopt the exception long ago, reasoning that it would create a slippery slope. *Id.* at 662. Instead, "[i]t is apparent that the General Assembly knows how to create statutory exceptions to the American rule, and that it has been willing to do so when it deems appropriate." *Id.* Mr. Burch has cited no statutory basis for attorney's fees. As such, his request for attorney's fees is **dismissed.**

## IV.
## Conclusion

Defendants' motion to dismiss, dkt. [14], is **GRANTED.** Mr. Burch's request for attorney's fees is **DISMISSED.** Final judgment shall issue by separate entry.

15

**SO ORDERED.**

Date: 11/25/2025

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel